**Jack GORDON, Appellant,**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare, Appellee.**

**No. 20235.**

United States Court of Appeals, Eighth Circuit.

Feb. 2, 1971.

Rehearing En Banc Denied March 1, 1971.

Irving Achtenberg, Kansas City, Mo., for appellant.

William D. Ruckelshaus, Asst. Atty. Gen., Bert C. Hurn, U. S. Atty., Kathryn H. Baldwin, Robert M. Feinson, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before MEHAFFY, GIBSON and LAY, Circuit Judges.

MEHAFFY, Circuit Judge.

Gordon, the claimant, filed an action to review a determination of the Secretary of Health, Education and Welfare, related to social security benefits. Upon review in the district court on cross-motions for summary judgment, the United States District Court for the Western District of Missouri, The Honorable William R. Collinson, in an unreported opinion, held that for social security

purposes Gordon was still the owner of a business transferred to his wife, that he admittedly continued to work at said business more than forty-five hours per month and was precluded from being eligible for old-age benefits by reason of his excess earnings from the business. The district court reversed the Secretary's ruling requiring claimant to repay the benefits already received. Only claimant has appealed from the court's action. We affirm.

There is no significant dispute about any of the material facts. For over thirty-five years claimant operated "Jack's News Stand" in Kansas City, Missouri. On May 11, 1965, at the age of sixty-four, he applied for social security benefits effective from and after his sixty-fifth birthday on July 20, 1965, stating on his application that he planned to sell his business to his wife in July because of declining health and that he was going into semi-retirement and would not render substantial services or receive more than $100.00 per month. His application for benefits was approved, effective July 21, 1965, and on that date he legally transferred his business to his wife along with the assignment of the lease, insurance policies, transfer of licenses, etc. Thereafter he was paid a salary of $100.00 per month and said he actually worked at the News Stand only about two or three hours per day, although he remained there throughout the day visiting with customers and relieving his wife if she had to go out. This was the maximum earnings which he could receive at that time without penalty, and after the effective date of the 1965 amendment to the Social Security Act which raised the wage ceiling to $125.00 per month, claimant's salary was increased to that amount.[1]

The Social Security Act directs that deductions be taken from old-age insurance benefits any month in which a recipient receives in excess of the ceiling in wages and/or self-employment income, 42 U.S.C. § 403(b), and a recipient is deemed to be self-employed if he devotes "substantial" time to a trade or business. The Secretary has promulgated a regulation to determine whether or not substantial services have been rendered which provides, among other things, that an individual will be presumed to be rendering substantial services if he devotes more than forty-five hours a month to his trade or business, unless he can establish that he could reasonably be considered retired. 20 CFR § 404.447(a) (2). Other factors to be considered include the regularity of the services provided and the change, if any, in the extent and nature of services rendered before and after retirement. 20 CFR § 404.446.

By claimant's own admission, he worked approximately two to three hours each day, opening the News Stand at 8:00 a. m. (after going by the station earlier to pick up the mail) and operating the business alone until approximately 10:00 or 10:30 a. m. when his wife arrived. Both of them stayed until closing time at 6:00 p. m. (4:00 p. m. on Sunday), although it is his contention that Mrs. Gordon assumed the management of the business upon her arrival and he relieved her only at lunch time or when she went to buy groceries. If she were rushed, he would occasionally sell a paper or magazine at other times. He said he had no hobbies and chose to spend his free time in the company of his wife and his friends. The News Stand is open seven days a week and even at two hours a day claimant would exceed the forty-five-hour limit of time which he could devote to the business, and under the regulation would therefore be presumed to be rendering "substantial" services. Based on this fact and the further undisputed evidence that he continued to stay at the News Stand while it was open, the proceeds of the business continued to go into his and his wife's joint checking account, he still

---

1. By a 1968 amendment, the amount was increased to $140.00 per month. 42 U.S.C. § 403(f) (3).

had authority to sign checks for business expenses, and he also placed orders for cigarettes, candy, etc., the Secretary concluded that he was still in control of the business and that all of the net proceeds therefrom should therefore be credited to his account as self-employment income. Including the "salary" he had been allowed, this amounted to $4,800.00 in 1965, $5,738.89 in 1966, and $5,477.03 in 1967, and rendered him ineligible to draw social security benefits.

Mrs. Gordon had helped her husband in the News Stand for approximately fifteen years but had never received a salary. Prior to the transfer or sale of the business to her on July 21, 1965, which was for $10.00 and other valuable considerations, claimant had always reported the net proceeds from the business as his self-employment income and paid self-employment tax thereon. Immediately prior to the transfer of the business to her she was working approximately five or six hours a day and claimant kept the business open from 8:00 a. m. until 9:00 p. m. six days a week but closed about 4:00 p. m. on Sunday. After Mrs. Gordon took over the business it was closed at 6:00 o'clock each week day, and she worked approximately eight hours each day. She wrote most of the checks, paying claimant's salary which was deposited in their joint checking account along with the proceeds of the business. After the transfer, she claimed and reported all of the net proceeds from the business as self-employment income and paid self-employment tax thereon. Claimant received and reported wages of $500.00 in 1965, and $1,500.00 in 1966 and 1967, all of which was deducted from the gross proceeds in arriving at the net figure reported by Mrs. Gordon.

The district court held that the Secretary's finding that claimant had performed "substantial" work in the business after his alleged retirement was supported by substantial evidence, affirming the Secretary in that respect, but found that the evidence was insufficient to support the finding that claim-ant was at fault in causing the overpayment and reversed the Secretary's holding that claimant must repay the $1,567.20 already received.

Claimant makes three principal arguments on appeal: (1) The trial court's findings were not supported by substantial evidence; (2) the trial court and the Appeals Council erred as a matter of law in charging the income of the business to claimant as "self-employment" income; and (3) if the Social Security Act and 20 CFR §§ 404.446 and 404.447 have the effect of denying claimant benefits after a bona fide transfer of his business, then such statutes and regulations as so interpreted deny him the equal protection of the law and are in violation of the Fifth and Fourteenth Amendments, as well as the Privileges and Immunities Clause of Article IV, Section 2 of the Constitution of the United States.

In its memorandum and order, the district court said:

"We do not question, and neither did the Hearing Examiner, the bona fides of the transfer of the business to Mrs. Gordon. A man is allowed to arrange his affairs so as to take advantage of all the leeway the law allows. Scott v. Celebrezze, 241 F.Supp. 733 (D.C.S.D. N.Y.1965). But even though a transfer is made, when the former owner or title holder retains the beneficial interest of the business and continues to render substantially similar services, the Administration may inquire into the substance of the transfer. Hellberg v. Celebrezze, 245 F.Supp. 390 (W.D.Mo.1965)."

Claimant does not disagree with this statement by the court but cites a number of cases in which courts have recognized business transfers within the family which resulted in qualifying a family member for social security benefits.

We have reviewed the cases cited by claimant and all are distinguishable. Claimant strongly relies on Skalet v. Finch, 303 F.Supp. 1379 (E.D.Tenn. 1969). This case was on appeal to the

Sixth Circuit at the time of the submission of the briefs here. The judgment of the district court was reversed in a well-considered opinion authored by Chief Judge Phillips, Skalet v. Finch, 431 F.2d 452 (6th Cir. 1970). *Skalet* held that the Secretary has the authority to consider the substance of any transaction over its form, citing Ludeking v. Finch, 421 F.2d 499 (8th Cir. 1970), as well as cases from other circuits. In *Ludeking, supra,* Judge Gibson, speaking for this court, said that it would appear that the Secretary has authority to consider substance over form and to evaluate the realities of transactions, and that unless there is some specific legal prohibition against his actions or an abuse of discretion his decision should stand.

■ The Secretary points out that the question in the cases cited by claimant was whether the motive to obtain social security benefits was sufficient to support the finding that a transaction was invalid, whereas in the present case the question is whether the claimant in reality has exercised control and operation in substantially the same fashion as before the transaction. (Motive to obtain social security benefits will not, in itself, invalidate a transfer.) The Appeals Council determined that there was no significant change in the operation of claimant's business following its purported transfer to his wife. The district court found, and we agree, that this is certainly supported by substantial evidence, as well as the Secretary's finding that claimant was not retired but was still in active control and operation of the business for the purposes of the Social Security Act. 42 U.S.C. § 405(g) provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. * * * " In construing this section, we have given it its plain meaning. See Easttam v. Secretary of Health, Education and Welfare, 364 F.2d 509 (8th Cir. 1966); Foss v. Gardner, 363 F.2d 25 (8th Cir. 1966); Nichols v. Gardner, 361 F.2d 963 (8th Cir. 1966); Cele-

brezze v. Bolas, 316 F.2d 498 (8th Cir. 1963); Cody v. Ribicoff, 289 F.2d 394 (8th Cir. 1961). Since it has been shown that claimant is not in fact retired, it is clear from the figures showing the net proceeds of the business that he received self-employment income in excess of the amount permitted under the Social Security Act.

■ Finally, it is asserted that to deny claimant benefits after a bona fide transfer of his business is to violate his constitutional rights guaranteed by the Privileges and Immunities Clause of Article IV, Section 2 and to deny him the equal protection of the law guaranteed by the Fifth and Fourteenth Amendments. It is argued that the Secretary has applied only an "economic benefits" test to claimant's situation in determining that he was still self-employed, and an attempt is made to equate this with income from investments, etc. which does not affect the social security benefits. The Secretary argues that he did not apply the "economic benefits" test but, rather, the "retirement test." Actually, the Secretary took into account the fact that claimant continued to perform work in the business, continued to exercise control over it, and continued to have full use of the income therefrom. On these facts, the Secretary concluded that claimant was not in fact retired from his business. We think, under the facts in this case, that no valid constitutional issue is involved.

■ We affirm the holding of the district court that the prior benefits received by claimant need not be repaid to the government since he had a right to attempt to arrange his affairs to come within the Social Security Act, although he evidently either misconstrued or was unaware of the regulation concerning the maximum amount of time he could devote to the business, and, as the district court said, he, in good faith, fell afoul of the regulation governing working hours. We agree with the district court that there was insufficient evidence to support the Secretary's finding

that the claimant was at fault in causing the overpayment. We hold as did Chief Judge Phillips in *Skalet, supra,* 431 F.2d at 455, that the proceedings in the present case are limited to the time period involved herein and are without prejudice to the right of the claimant to file another application based upon any change in facts arising after the time covered by this proceeding.

The judgment of the district court is affirmed.