**Thomas E. BUNCH, Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellee.**

**No. 81–2164.**

United States Court of Appeals, Fourth Circuit.

Argued March 31, 1982.

Decided June 22, 1982.

---

John E. Tantum, Wendell, N. C., for appellant.

Lillie Price, Social Sec. Div., Dept. of Health and Human Services, Baltimore, Md. (J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Samuel T. Currin, U. S. Atty., Raleigh, N. C., Randolph W. Gaines, Chief of Litigation, Baltimore, Md., on brief), for appellee.

Before MURNAGHAN and CHAPMAN, Circuit Judges, and KISER [*], District Judge.

MURNAGHAN, Circuit Judge:

For income tax purposes, Congress has recently abandoned the distinction between earned and unearned income. Pub.L.No. 97–34 § 101(a) (Aug. 13, 1981). Here we encounter complications engendered by the application of a similar distinction for purposes of determination of qualification before retirement, and entitlement after retirement, for social security retirement insurance benefits.[1]

Thomas E. Bunch was a soybean farmer and the proprietor of a mobile home park in the years before his retirement. By treating the earnings from his mobile home park as the product of self-employment rather than as investment income, Bunch was able to qualify for social security benefits by the time of his retirement.[2] Presumably Bunch was satisfied to subject the income to self-employment taxes in light of the anticipated social security retirement benefits which he would ultimately realize.

However, Bunch came close to being hoist with his own petard. In 1977 he retired from soybean farming, but continued to operate the trailer park. He reached age 62 on January 27, 1978, and elected to take early retirement under the social security laws.

If, following retirement, someone otherwise qualified has self-employment income, it may diminish or eliminate the entitle-

---

[*] The Honorable Jackson L. Kiser, United States District Judge for the Western District of Virginia, sitting by designation.

1. See Delno v. Celebrezze, 347 F.2d 159, 163 n.10 (9th Cir. 1965):

"Congress realized that the income of self-employed persons is in most instances a combination of income from both labor and invested capital, and deliberately chose not to attempt the difficult, if not impossible, task of separating one from the other."

2. An individual can qualify for social security retirement benefits by accumulating the requisite number of "quarters of coverage." 42 U.S.C. § 414. Only self-employment and wage income are considered in determining how many quarters of coverage an individual has accumulated. 42 U.S.C. § 413.

ment to social security retirement benefits. 42 U.S.C. § 403(b).[3] For 1978 the mobile home park income, if treated as self-employment income, was sufficient to eliminate altogether Bunch's entitlement to benefits. Attempting to escape that consequence, Bunch incorporated the business shortly after his retirement.

We first observe that, since Bunch's activities before and after incorporation were substantially the same, the incorporation of his business had no effect on the treatment of his income. The secretary is not required to give effect to form rather than substance. *See Gordon v. Finch*, 437 F.2d 253, 257 (8th Cir. 1971); *Ludeking v. Finch*, 421 F.2d 499, 502 (8th Cir. 1970).

Nevertheless, we are satisfied that the income from the mobile home park was not self-employment income. The applicable regulation appears at 20 C.F.R. § 1082 (d)(2). It generally defines the circumstances in which the rental of living quarters (including tourist camps or tourist homes) also involves provision of services which are sufficient to require inclusion of the income for purposes of ascertaining net earnings from self-employment. The pertinent language reads:

> We consider the supplying of maid service to be a service provided to the occupant. However, we do not consider the furnishing of heat and light, the cleaning

of public entrances, exists, stairways and lobbies *and the collection of trash*, as services provided to the occupant. (Emphasis supplied).[4]

Under the established practice, Bunch devoted approximately eighty hours *per annum* to the mobile home park's affairs. His wife collected the rents. Each tenant had the responsibility himself or herself to hook up to the plumbing and electric facilities provided by the landlord, and each paid utility bills directly to the company providing them. No maintenance was afforded by Bunch insofar as the street serving the park was concerned. Bunch did arrange for collections of trash, including garbage, to be made from the premises of each tenant. However, cleanliness of the space and grass mowing were the responsibilities of the tenant. Bunch did not make available to lessees laundry facilities or other amenities.

The sole service provided by Bunch—trash collection—is, by regulation, expressly excluded from consideration. The rental income, accordingly, is not self-employment income, and may not be included in ascertaining maximum allowable earnings. *Cf. Maloney v. Celebrezze*, 337 F.2d 231, 233 (3d Cir. 1964).

Of course, Bunch will welcome the consequent reversal. However, he may merely be leaving the rigors of the frying pan for

---

**3.** 42 U.S.C. § 403(b) provides in part:

Deductions, in such amounts and at such time or times as the Secretary shall determine, shall be made from any payment or payments under this subchapter to which an individual is entitled, and from any payment or payments to which any other persons are entitled on the basis of such individual's wages and self-employment income....

Excluded from the definition of net earnings from self-employment are, *inter alia*, "rentals from real estate and from personal property leased with the real estate ... unless such rentals are received in the course of a trade or business as a real estate dealer," and "dividends on any share of stock." 42 U.S.C. § 411(a).

**4.** *See also Delno v. Celebrezze, supra*, 347 F.2d at 163:

The apparent intent of Congress was that section 211(a)(1) should be applied to exclude only payments for use of space, and, by implication, such services as are required to maintain the space in condition for occupancy. If the owner performs additional services of such substantial nature that compensation for them can be said to constitute a material part of the payment made by the tenant, the 'rent' received then consists in part of income attributable to the performance of labor which is not incidental to the realization of return from investment. In such circumstances, the entire payment is to be included in computing the recipient's net earnings from self-employment.

The collection of trash, including garbage, is a service required to maintain the space in condition for occupancy, a performance of labor incidental to the realization of return from investment. As the regulation explicitly recognizes, collection of trash is not so substantial in nature as to render compensation for that service a material part of the tenant's rental payment.

the immolation of the fire. Without expressing any opinion one way or the other as to the extent of the authority of the Secretary of Health and Human Services, at the present stage of the proceedings, we direct the district judge to remand the matter to the Secretary to permit inquiry into whether the question may now be pursued and, if so, whether the rental income from the mobile home park prior to Bunch's sixty-second birthday was the same in character, and hence not the result of self-employment. The purpose of the inquiry would be to determine whether there may be, and, if so, whether there should be, a redetermination of Bunch's qualification for retirement benefits.

REVERSED AND REMANDED.